**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Wanda Elaine Smith-Jeter,          )  No.  CV-21-00846-PHX-SPL
                                    )
                Plaintiff, )
                                    )  **ORDER**
vs.                                  )
                                    )
City of Scottsdale, et al.,         )
                                    )
              Defendants. )
                                    )

           Before the Court is pro se Plaintiff Wanda Elaine Smith-Jeter's ("Plaintiff") Motion for Temporary Restraining Order and Motion for Legal Assistance and Counsel (Doc. 59). On June 3, 2022, the Court denied Plaintiff's request for legal assistance but withheld ruling on Plaintiff's request for a temporary restraining order ("TRO") to allow briefing and to hold a hearing on the issue. (Doc. 60). The parties have fully briefed the Motion, (Docs. 59, 63, 65), and a hearing was held before this Court on June 10, 2022 (Doc. 67). Having read the parties' briefs and having heard their arguments, the Court now issues this Order denying Plaintiff's Motion.

**I.**        **BACKGROUND**

           On May 11, 2021, Plaintiff, filed her initial Complaint (Doc. 1) in this matter; she has since filed several Amended Complaints (Docs. 6, 37, 55). Plaintiff originally named as Defendants the City of Scottsdale, Scottsdale Housing Agency, Scottsdale City Attorney Sherry Scott, Villa Montana Apartments, and Al Angelo Company. (*See* Doc. 1). However,

only two Defendants remain: City of Scottsdale and Al Angelo Company.[1] Plaintiff asserts claims under several federal statutes, including 42 U.S.C. §§ 1982–83 and the Fair Housing Act, 42 U.S.C. § 3604, *et seq.* (Doc. 55-1 at 3, 6).

Plaintiff's claims arise out of her tenancy at the Villa Montana Apartments (the "Apartments") in Scottsdale, Arizona, which are managed by Defendant Al Angelo Company. (*Id.* at 6). Plaintiff and her husband, Jesse James Jeter—who are ages 70 and 67, respectively—are "Black/African-Americans" who both live with disabilities and mobility issues. (*Id.*). Plaintiff and Mr. Jeter relocated from Vancouver, Washington, (*Id.*), and entered into a one-year lease at the Apartments from May 1, 2021 to April 30, 2022. (*See* Lease, Doc. 63-1). Plaintiff and Mr. Jeter participated in Section 8's HUD Housing Choice Voucher program, a federally funded program for low-income tenants. (Doc. 55-1 at 6). Plaintiff alleges that she and her husband experienced several instances of "race discrimination and malicious harassment from the very beginning of [their] tenancy." (*Id.*). These discrimination claims are the basis of her Complaint. (*Id.*).

The present Motion, however, does not directly relate to Plaintiff's discrimination claims. Instead, the Motion concerns Plaintiff's allegation that, on May 27, 2022, she and her husband were "forcibly removed" from their apartment. (Doc. 59 at 1). She alleges that they were not served with an eviction notice, in violation of state law. (*Id.* at 3). As a result, Plaintiff asserts that they were not afforded an opportunity "to appear in court and defend [themselves]" or to apply for "a reasonable accommodation due to disability." (*Id.* at 2). Plaintiff requests that this Court issue a TRO in response to their allegedly illegal eviction. While it was initially unclear what Plaintiff wanted the TRO to do, Plaintiff indicated at the June 10, 2022 Hearing that she is requesting an order from this Court overturning the eviction and ordering that she be permitted back into the apartment unit.

---

[1] Scottsdale Housing Agency and Villa Montana Apartments were terminated as Defendants after Plaintiff failed to name them in her Amended Complaint (Doc. 6). Scottsdale City Attorney Sherry Scott was dismissed from the case after the Court granted Scott's Motion to Dismiss (Doc. 32).

## II.     LEGAL STANDARD

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[2] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06  (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988).

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation omitted) (citation omitted). Where the movant seeks a mandatory injunction, rather than prohibitory, injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).[3]

---

[2] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff… so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

[3] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotations omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   DISCUSSION

The Court denies Plaintiff's request for a TRO because she has failed to sufficiently address the *Winter* factors; most critically, Plaintiff has failed to show that she has a likelihood of success on the merits of her discrimination and civil rights claims. Moreover, the record does not indicate that Plaintiff's eviction was "illegal," improper, or otherwise procedurally insufficient. Even if there *were* questions surrounding the eviction, it is unclear from Plaintiff's arguments whether this Court has the jurisdiction or authority to overturn an eviction ordered by an Arizona state court, at least where Plaintiff has not availed herself of the state-level appeals process.

First, Plaintiff has not demonstrated a likelihood that she will succeed on the merits of her claims; nor has she shown that there are "serious questions" going to the merits. "To establish a substantial likelihood of success on the merits, [a plaintiff] must show 'a fair chance of success.'" *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (citation and internal quotations omitted). "A claim can be weaker on the merits if it raises 'serious questions' and the amount of harm the injunction will prevent is very great, but the chances of success on the merits *cannot be weaker than* '*likely.*'" *Shebanow v. First Magnus Fin. Corp.*, No. 3:10-cv-00765-RCJ-RAM, 2010 WL 5390132, at *3 (D. Nev. Dec. 22, 2010). Here, Plaintiff's only argument with respect to this factor is that she "believe[s] and can show that [she is] likely to succeed on the merits of this case, as soon as the defendants have 'Answered' the Plaintiff's (3rd) Amended Complaints: the law and the facts clearly favor the plaintiff." (Doc. 59 at 2). Such a conclusory argument fails to substantively explain why Plaintiff is likely to succeed on—or how there are at least "serious questions" going to the merits of—her discrimination and civil rights claims. Plaintiff's failure to make any showing on this factor is detrimental to her request for a TRO.

Even if Plaintiff sufficiently addressed the *Winter* factors, it is not clear that her eviction was "illegal" or otherwise improper such that a TRO should issue to overturn it. Plaintiff's lease was set to expire on April 30, 2022; after that date, the lease was to convert to a monthly tenancy. (Doc. 63-1 at 2, 4). The lease specifically states that "Management

has the right to non renew this lease and in such cases, Resident agrees to vacate on the expiration date of the lease." (*Id.* at 4). Defendant Al Angelo Company chose to exercise this right because it was "[n]o longer participating in the Section 8 Voucher Program" and—on February 22, 2022—Defendant provided Plaintiff with 60-days' notice of its decision to non-renew the lease. (*See* Sixty-Day Notice to Terminate Tenancy, Doc. 63-2). While Plaintiff maintains that she never received the notice, the notice was fastened to the door of her unit *and* a copy of the notice was sent to Plaintiff by certified mail. (*Id.* at 2). Further evidencing that Plaintiff received the notice is the fact that she *herself* filed a copy of the notice in this matter. (*See* Doc. 31, filed February 28, 2022).

Plaintiff failed to vacate the unit on April 30, 2022 and at that point she became a holdover tenant. Defendant filed a special detainer action in the McDowell Mountain Justice Court and an eviction hearing was set for May 17, 2022. The summons and complaint for this action were served on Plaintiff by a certified process server on May 11, 2022. (Docs. 63-3 & 63-4). Again, service was completed by posting the summons and complaint to Plaintiff's door and by mailing separate copies of each to Plaintiff by certified mail. (*Id.*). Again, such form of service is sufficient under Arizona law.[4] Plaintiff and her husband failed to appear at the May 17 eviction hearing. (Doc. 63-5). Judgment was entered against them by default, and they were evicted from the Apartments. In sum, this Court finds that the evidence indicates that Plaintiff's eviction was procedurally correct and there is no evidence to suggest—despite what Plaintiff claims—that the eviction was illegal or otherwise improper. As noted above, even if there were questions surrounding the eviction, it is unclear whether this Court has the jurisdiction or authority to overturn the eviction, particularly considering that Plaintiff does not appear to have availed herself of the proper

---

[4] Specifically, Arizona law provides that "[t]he tenant is deemed to have received the summons three days after the summons is mailed *if personal service is attempted* and within one day of issuance of the summons a copy of the summons is *conspicuously posted on the main entrance of the tenant's residence* and on the same day the summons *is sent by certified mail*, return receipt requested, to the tenant's last known address." A.R.S. § 33-1377(B) (emphasis added).

avenue for overturning an eviction—the state-level appeals process.

## IV.    CONCLUSION

In sum, Plaintiff has not made a sufficient showing to warrant this Court granting the "extraordinary and drastic remedy" she requests—a TRO ordering that her eviction be overturned, and that she be permitted back into the unit. Even if she made a stronger showing as to the *Winter* factors, this Court would be reluctant to overturn the eviction because all evidence that has been presented indicates that the eviction was justified and properly carried out. Moreover, given that Plaintiff has apparently not availed herself of the state-level appeals process, this Court is not the proper forum—at least at this stage—for Plaintiff to overturn a state-issued eviction. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Temporary Restraining Order and for Legal Assistance and Counsel (Doc. 59)—which has already been denied to the extent Plaintiff seeks legal assistance (*See* Doc. 60)—is now *also* **denied** to the extent Plaintiff seeks the issuance of a Temporary Restraining Order. Thus, the Motion (Doc. 59) is **denied in its entirety**.

Dated this 14th day of June, 2022.

Honorable Steven P. Logan
United States District Judge

6